## E. H. Rollins & Sons Company v. Funk et al.

*Equity — Injunction—School district—Sale of bonds—Bidders—Laches— Taxpayer—Parties.*

1. A disappointed bidder for bonds advertised for sale by a school board is not a proper party to a bill to restrain the board from selling the bonds to another bidder, it being the part of a taxpayer who suffers pecuniary loss, if a low bid is rejected, to bring such a bill.

2. The provisions contained in the official notice of sale of bonds are binding upon all bidders.

3. A bidder who is notified on June 10th of the rejection of his bid is guilty of laches if he waits until June 30th to complain.

Bill for injunction. C. P. Allegheny Co., July T., 1925, No. 2992.

*Franklin T. Nevin,* for plaintiff; *H. E.* and *H. S. Carmack,* for defendants.

SHAFER, P. J., July 2, 1925.—1. The bill is by a corporation of the State of Maine, having its principal place of business in Philadelphia, against the directors of the School District of the Borough of Forest Hills, praying for an injunction to restrain the defendants from delivering certain bonds to M. M. Freeman & Co., and to require the defendants to award and deliver those bonds to the plaintiffs, as being the highest bidders therefor. The matter came before the court originally upon a motion for a preliminary injunction, but an answer having been filed, and it being apparent that there was no dispute about matters of fact, the case was ordered for final hearing and testimony was thereupon taken.

E. H. Rollins & Sons Company v. Funk et al.

2. It appears from the pleadings and the testimony that the defendants, as school directors, authorized the issue of $40,000 of coupon bonds and advertised proposals for the same as provided by law. The advertisement stated that bids would be received for these coupon bonds in certain denominations and that the "purchaser would pay for the printing of said bonds," and the advertisement also contained a provision that the school district reserved the right to reject any and all bids.

3. Nine bids were received for the bonds, five of which expressly stated that the purchaser would pay for the printing of the bonds, and the other four did not so state. The bid of the plaintiff was one of the four, the next lowest bid being between $6 and $7 lower than the bid of the plaintiff, and contained a statement that the purchaser would pay for the printing of the bonds. The bid of the plaintiffs also contained a statement that the bid was made "with the understanding that you will furnish, or cause to be furnished to us, a complete certified transcript of all legal proceedings relative to this issue," there being no reference in the advertisement to such a provision. We do not understand, however, that the fact that the bid contained this condition really actuated the board in rejecting the bid of the plaintiff.

4. At the opening of the bids the board awarded the bonds to M. M. Freeman & Co. upon a bid some $6 lower than the bid of the plaintiffs. They, or at least some of them, were actuated in doing this by the fact that the plaintiff's bid did not mention specifically the printing of the bonds and they feared that the plaintiffs would not be bound to do so and they would be thereby subjected to the loss of the cost of such printing, which they put at $75.

5. The bids were opened on June 8, 1925, and the plaintiffs were notified within a day or two thereafter that their bid was not accepted. The bill herein was filed June 30, 1925.

### Conclusions of law.

1. We are unable to see why the school board thought it necessary to have the bid expressly promise to print the bonds when that provision was contained in the advertisement, and the acceptance was made subject to the provisions of the official notice of sale. The doubt undoubtedly originated in their minds by reason of the fact that most of the bids expressly provided for this, and we have no doubt that the mistake, if there was any, was an honest one.

2. The plaintiffs having been informed within a day or two of June 8th of the action of the board and having waited until June 30th before taking any action, in the meantime allowing the board and the successful bidder to proceed with the sale of the bonds, we are of opinion that the plaintiffs are guilty of laches.

3. We are unable to see what standing the plaintiffs have to maintain the bill or what injury is done to them by the rejection of their bid. They are simply in the position of a person whose offer to buy bonds at a certain price was not accepted, that offer being made in reply to a proposal which reserved the right to reject any bid. We have seen no case in which a bill by a disappointed bidder has been sustained. Cases of this kind come before the courts upon a bill by a taxpayer who suffers a pecuniary loss if a low bid is rejected.

4. We are, therefore, of opinion that the plaintiffs are not entitled to the relief prayed for, and the bill should be dismissed.

From William J. Aiken, Pittsburgh, Pa.